**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) Case No.  2:16-cr-00014-GMN-CWH |
| vs. | ) **REPORT & RECOMMENDATION** |
| RONALD HARRIS, | ) |
| Defendant. | ) |

This matter is before the Court on Defendant's Motion to Suppress (ECF No. 12), filed on May 25, 2016; the Government's Response (ECF No. 14), filed on June 6, 2016; and Defendant's Reply (ECF No. 15), filed June 9, 2016.  The Court conducted an evidentiary hearing on June 13, 2016.  (Minutes of Proceedings (ECF No. 16)).

**I.    BACKGROUND**

Defendant Ronald Harris is charged by a criminal indictment (ECF No. 1) with possession with intent to distribute methamphetamine in violation of Title 18, U.S.C. §§ 841(a)(1) and (b)(1)(B).  By way of this motion, Defendant seeks to suppress "all tangible evidence and statements from December 8, 2015," the day of Defendant's arrest.

**II.    FACTS**

On December 8, 2015, at approximately 11:45 a.m., Las Vegas Metropolitan Police Department ("LVMPD") Sergeant Victor Sabino was on duty in the City of Las Vegas, when he saw a car make what he describes as a "quick right turn" onto North Nellis Boulevard, near the intersection of Nellis Boulevard and Washington Avenue.  Sergeant Sabino followed, and conducted a records check on the car's license plate, which revealed that the car's registration was suspended as of July 7, 2015.  The records check also showed that the car's owner, Ronald Harris,

was on federal probation and had prior drug trafficking and firearm-related felony convictions. Based on this information, Sergeant Sabino called for back-up and initiated a stop, which occurred at 1180 North Nellis Boulevard, at 11:47 a.m. Sergeant Sabino then approached the car to confirm that the driver was Ronald Harris, after which he returned to his patrol car to write out a citation for the suspended registration. This process normally takes Sergeant Sabino approximately twenty minutes.

Within about five minutes of the initial stop, Officers Salario, Funes, and Hamilton had all arrived at the scene. After consulting with Sergeant Sabino, Officers Salario and Funes approached Defendant's car, about a minute after Officer Funes had arrived. Upon their approach, both officers detected the smell of marijuana coming from the car. The officers then asked Defendant and his passenger to step out of the car, and they escorted them to separate patrol cars at the scene. The officers informed LVMPD police about the situation, which then dispatched a K-9 unit to the scene.

At approximately 12:43 p.m., Officer Dukes and a drug-sniffing dog arrived. After consulting with the officers on the scene, Officer Dukes determined that there was already probable cause to search the car based on the smell of marijuana detected by Officers Salario and Funes. As Officer Dukes approached, he also smelled marijuana coming from the car, and he proceeded to search the car. This search revealed a backpack in the trunk that contained cash, as well as a plastic bag, within which were smaller bags containing what appeared to be marijuana.

Defendant was then transported to Clark County Detention Center, where Officer Salario advised him of his rights. Officer Salario used the standard text of the card supplied by LVMPD, which read: "You have the right to remain silent. Anything you say can be used against you in a court of law. You have the right to the presence of an attorney during questioning. If you cannot afford an attorney, one will be appointed before questioning. Do you understand these rights?"

Defendant now moves to suppress the drugs, money, and statements he made on December 8, 2015 as evidence gathered in violation of his Forth and Fifth Amendment rights.

1    III.    **ANALYSIS**

2    **1.        Probable Cause**

3    Defendant argues that police searched his car without probable cause, in violation of his

4    Fourth Amendment rights.  The Government responds that there was probable cause for the search

5    based on the smell of marijuana.  Defendant replies that even if there was probable cause, the

6    search was still unreasonable because of the delay between when officers first smelled marijuana

7    and the beginning of the search.

8    The Fourth Amendment secures "the right of the people to be secure in their persons,

9    houses, papers, and effects against unreasonable searches and seizures."  U.S. Const. amend. IV.

10   The Fourth Amendment protects reasonable and legitimate expectations of privacy.  *Katz v. United*

11   *States,* 389 U.S. 347 (1967).  The Fourth Amendment protects "people, not places."  *Id.*  Evidence

12   obtained in violation of the Fourth Amendment, and evidence derived from it may be suppressed as

13   the "fruit of the poisonous tree."  *Wong Sun v. United States,* 371 U.S. 471 (1963).  A warrantless

14   search of a vehicle is per se unreasonable under the Fourth Amendment, subject to only a "few

15   specifically established and well-delineated exceptions."  *United States v. Cervantes,* 703 F.3d

16   1135, 1138–39 (9th Cir. 2012) (citing *Katz,* 389 U.S. at 357).  The government bears the burden of

17   establishing a warrantless search or seizure falls within one of these exceptions. *Cervantes,* 703

18   F.3d at 1141.

19   The automobile exception to the warrant requirement allows a vehicle to be searched

20   without a warrant if the police have probable cause to believe the vehicle contains contraband or

21   other evidence of criminal activity.  *Id.* at 1139 (citing *California v. Acevedo,* 500 U.S. 565, 580

22   (1991)).  The rationale for the automobile exception is that vehicles are mobile, so can be driven

23   away before a warrant may be obtained, and because there is a lesser expectation of privacy in

24   vehicles traveling openly in public view.  *California v. Carney,* 471 U.S. 386, 390 (1985).

25   Probable cause exists where there is a "fair probability that contraband or evidence of a crime will

26   be found in a particular place, based on the totality of the circumstances."  *Dawson v. City of*

27   *Seattle,* 435 F.3d 1054, 1062 (9th Cir. 2006) (citing *Illinois v. Gates,* 462 U.S. 213, 238 (1983)).

28   Probable cause is "a fluid concept-turning on the assessment of probabilities in particular factual

1   contexts-not readily, or even usefully, reduced to a neat set of legal rules." *Gates,* 462 U.S at 232.

2   Probable cause does not deal with hard certainties, but with probabilities. *Id.* at 241.

3        One indicator of probable cause is the odor of marijuana emanating from a vehicle. *United*

4   *States v. Evans*, 122 F. Supp. 3d 1027, 1034 (D. Nev. 2015), appeal dismissed (Sept. 16, 2015)

5   (noting that "[i]t is well-established that an officer's scent of illegal drugs upon approaching a

6   vehicle is sufficient to establish reasonable suspicion, or even probable cause"); *See also United*

7   *States v. Parker*, 919 F. Supp. 2d 1072, 1080 (E.D. Cal. 2013); *United States v. Barron*, 472 F.2d

8   1215, 1216 (9th Cir.1973).  If the police have probable cause to believe a vehicle contains

9   contraband, a warrantless search of every part of the vehicle and its contents as might conceal the

10  object of the search is justified. *Wyoming v. Houghton,* 526 U.S. 295, 301 (1999).

11       Here, the parites do not dispute that the original traffic stop was valid.  Defendant only

12  contests the validity of the search conducted approximately one hour after the stop, when Officer

13  Dukes and the drug-sniffing dog arrived.  Defendant argues that since the state of Nevada has

14  legalized possession and consumption of marijuana under certain circumstances for certain people,

15  the odor of marijuana alone no longer provides a basis for reasonable suspicion.  In support of this

16  assertion, Defendant cites *Com v. Canning,* 28 N.E. 3d 1156 (Mass. 2015), in which the court held

17  that in Massachusetts, a probable cause affidavit in support of a warrant to search property for

18  evidence of possession and cultivation of marijuana must provide information suggesting that such

19  possession is illegal.  Defendant does not provide any legal authority that is binding on this Court.

20       Even if the Court were to accept Defendant's argument, a finding of probable cause would

21  still be appropriate.  Officers Salario, Funes, and Dukes all credibly testified that they detected the

22  odor of marijuana coming from Defendant's car. The officers also knew that Defendant was

23  currently on federal probation for convictions related to drug-trafficking, which would preclude

24  him from legally possessing marijuana under Nevada law.  This is sufficient to provide the "fair

25  probability on which reasonable and prudent people, not legal technicians, act." *Florida v. Harris*,

26  133 S. Ct. 1050, 1055, 185 L. Ed. (2013) (quotation marks omitted).  The totality of the

27  circumstances suggested that the car contained evidence of a crime. Therefore, the police had

28  probable cause to search it.

Regarding Defendant's argument that even if there was probable cause, the search was unreasonable because of the delay between when officers first detected the smell of marijuana and the beginning of the search, approximately 50 minutes later, the Court finds that the cases Defendant cites are inapposite. In *United States v. Sharpe*, 470 U.S. 675 (1985), the Court considered only the reasonableness of a detention in conjunction with an investigative stop. The absence of probable cause in that case was conceded by the government. *Id*. at 680. As for *United States v. Baron*, 860 F.2d 911 (9th Cir. 1988), Defendant cites it only to show that the court must consider the totality of the circumstances to determine whether an investigative detention, based only on reasonable suspicion, has ripened into an arrest. *Id*. at 914. That has no bearing on this case. The search of Defendant's vehicle was based on probable cause. Defendant does not provide any authority holding that a delay of approximately one hour after finding probable cause before a search commences violates a defendant's Fourth Amendment rights. The Court therefore finds that the warrantless search was valid under the automobile exception, as it was supported by probable cause.

**2.      Miranda**

Defendant argues that his Fifth Amendment right against self-incrimination was violated when the police failed to expressly warn him of his right to consult with an attorney before questioning, or effectively warn him of his right to the presence of an attorney during questioning. The government argues that LVMPD's standard *Miranda* warning sufficiently informed Defendant of his rights under *Miranda* and its progeny.

The Fifth Amendment guarantees that no person "shall be compelled in any criminal case to be a witness against himself." U.S. Const. amend. V. To protect this right, the Supreme Court, in *Miranda v. Arizona*, 384 U.S. 436 (1966), held that, before any custodial interrogation, a citizen must be informed that "he has the right to remain silent, that anything he says can be used against him in a court of law, that he has the right to the presence of an attorney, and that if he cannot afford an attorney, one will be appointed for him prior to any questioning." *Id.* at 479. The Supreme Court has found that interrogation in custodial circumstances is inherently coercive and that statements made under such circumstances are inadmissible unless the suspect is specifically

1  warned of his *Miranda* rights and freely decides to forgo those rights.  *New York v. Quarles*, 467

2  U.S. 649, 654 (1984).

3    The *Miranda* decision "established certain procedural safeguards that require police to

4  advise criminal suspects of their rights under the Fifth and Fourteenth Amendments before

5  commencing custodial interrogation."  *Duckworth v. Eagan*, 492 U.S. 195, 202 (1989).  *Miranda*

6  warnings are prophylactic in nature and are "not themselves rights protected by the Constitution."

7  *Michigan v. Tucker*, 417 U.S. 433, 444 (1974).  Instead, *Miranda* warnings are "measures to ensure

8  that the right against compulsory self-incrimination [is] protected."  *Id.*  Courts evaluating a

9  warning should determine whether they reasonably convey to the suspect the rights *Miranda*

10  requires.  *California v. Prysock*, 453 U.S. 355, 361 (1981).  Warnings that tend to mislead or

11  confuse are inadequate.  *Id*. at 359.  However, no "talismanic incantation" is required to satisfy

12  M*iranda*.  *Id.* at 359.  Rather, police may employ the terms found in the *Miranda* decision, or their

13  "fully effective equivalent" to adequately warn suspects of their constitutional rights.  *Id.* at 360.

14    To be sufficient, a *Miranda* warning need not spell out in perfect detail every aspect of a

15  suspect's rights.  "If a defendant has been told the substance of his constitutional rights, it is not

16  fatal if irrelevant words or words with no independent substance are omitted."  *United States v.*

17  *Noti*, 731 F.2d 610, 615 (9th Cir. 1984).  In *United States v. Noa*, 443 F.2d 144 (9th Cir. 1971), the

18  Ninth Circuit held that a *Miranda* warning was adequate even though it did not explicitly state that

19  appointed counsel would be available before and during questioning.  In *People of the Territory of*

20  *Guam v. Snaer*, 758 F.2d 1341 (9th Cir. 1985), the Ninth Circuit concluded that Guam's standard

21  warning was adequate even though it did not expressly state that the Defendant had the right to

22  consult with a lawyer before questioning.  In *United States v. Miguel*, 952 F.2d 285 (9th Cir. 1991),

23  the Ninth Circuit concluded that *Miranda* warnings were adequate when the officer told a suspect

24  he "may" have an attorney appointed if he could not afford one.  *Id.* at 287–88.

25    Here, Defendant was advised that he had "the right to the presence of an attorney during

26  questioning," and that if he "cannot afford an attorney, one will be appointed before questioning."

27  This warning nearly mirrors the language used by the Supreme Court in the original *Miranda*

28  decision, which required that a suspect "be warned prior to any questioning that he has the right . . .

to the presence of an attorney, and that if he cannot afford an attorney one will be appointed for him prior to any questioning if he so desires." *Miranda*, 384 U.S. at 479. Nevertheless, Defendant argues that the warning did not advise him of his right to consult with an attorney before or during questioning, and is therefore inadequate.

The Court rejects this argument. Defendant seeks to make the word "consult" a requirement for a valid *Miranda* warning. This ignores the directive of the Supreme Court that "no talismanic incantation [is] required to satisfy [the] strictures" of *Miranda*. *Prysock* 453 U.S. at 359. While *Miranda* does require that a suspect be informed of his right to consult with an attorney, *Snaer*, 758 F.2d at 1342, the word "consult" itself is not part of that requirement, so long as the warning conveys the substance of the suspect's constitutional rights. *Id.* at 1343. The warning given Defendant advised him that he had the right to have an attorney present during questioning, and that if he could not afford one, that he would be appointed an attorney before any questioning began. Taken in context, these statements suggest that a suspect has the right not only to the mere presence of an attorney, but the right to consult with that attorney.

Defendant argues that the right to the presence of an attorney does not suggest the right to consult with one. Such strict construal of *Miranda* warnings has been rejected by the Supreme Court. *Eagan*, 492 U.S. at 203. ("Reviewing courts therefore need not examine *Miranda* warnings as if construing a will or defining the terms of an easement.") Nothing in the warning suggests that the attorney's presence would be limited to mere observation, or that consultation would be precluded until questioning began. The clear and reasonable interpretation of the warning given Defendant includes the right to consult with an attorney before and during questioning.

To support the contention that the right to consultation cannot be inferred from the right to the presence of an attorney, Defendant relies on a case in which the Ninth Circuit found a *Miranda* warning deficient because it did not advise the suspect that he had the right to consult with an attorney. *United States v. Toliver*, 480 F. Supp. 2d 1216 (D. Nev. 2007), *aff'd,* 380 F. App'x 570 (9th Cir. 2010). However, unlike the warning given Defendant, the *Toliver* warning did not advise the suspect of his right to the presence of an attorney during questioning, nor that he would be appointed an attorney before questioning if he could not afford one. The *Toliver* warning merely

advised the suspect that "You've got a right to an attorney.  If you can't afford an attorney one will be appointed to you free of charge." *Id*. at 1240.  The failing of the *Toliver* warning goes much deeper than the lack of the word "consult."  The defendant in that case had no basis to know how or when his right to an attorney could be exercised.  Nothing in the *Toliver* Court's decision suggests that the warning would still be inadequate if it included the same language employed by LVMPD.

Defendant also cites *U.S. v. Noti*, claiming that the warning rejected in that case is similar to the one given Defendant.  However, the two cases are distinct in at least one important respect.  The fatal defect in the *Noti* warning was that it failed to advise the suspect that he had the right to the presence of an attorney during questioning.  *Noti*, 731 F.2d at 610.  ("The right to have counsel present during questioning is meaningful.  Advisement of this right is not left to the option of the police; it is mandated by the Constitution.").  Defendant's warning complied with the exact language the Court found lacking from the warning in *Noti*.  The LVMPD warning is therefore supported rather than undermined by the decision in *Noti*.

The Court is not aware of, nor does Defendant cite, any binding authority finding that a *Miranda* warning which employs language virtually identical to the original formulation put forth in *Miranda* to be inadequate.  The Court therefore finds that LVMPD's warning was sufficient to advise Defendant of his rights, and his subsequent waiver of those rights was valid.

## IV.   CONCLUSION AND RECOMMENDATION

IT IS THEREFORE RECOMMENDED that Defendant Ronald Harris' Motion to Suppress (ECF No. 12) be DENIED.

## V.     NOTICE

This Report and Recommendation is submitted to the United States District Judge assigned to this case under 28 U.S.C. § 636(b)(1).  A party who objects to this Report and Recommendation may file a written objection supported by points and authorities within fourteen days of being served with this Report and Recommendation.  Local Rule IB 3-2(a).  Failure to file a timely objection may waive the right to appeal the District Court's Order.  *Martinez v. Ylst*, 951 F.2d 1153, 1157 (9th Cir. 1991).

DATED: June 30, 2016

_____
**C.W. Hoffman, Jr.**
**United States Magistrate Judge**

9